# UNITED STATES DISTRICT COURT
## MIDDLE DISTRICT OF FLORIDA
### ORLANDO DIVISION

**LORINDA TANAKA,**

    **Plaintiff,**

**v.**                                                         **Case No: 6:11-cv-2002-Orl-31KRS**

**GEICO GENERAL INSURANCE COMPANY,**

    **Defendant.**

## ORDER

The Plaintiff, Lorinda Tanaka ("Tanaka"), seeks to reinstate a claim for breach of fiduciary duty against the Defendant, GEICO General Insurance Company ("GEICO"), which was dismissed in January 2012. (Doc. 24).

### I. Background

This diversity case arises from a motor vehicle accident between Tanaka and GEICO's insured, Shayna Wardlow ("Wardlow"), in which Tanaka suffered damages. According to the allegations of the Complaint (Doc. 2), which are accepted in pertinent part as true for purposes of this motion, GEICO refused Tanaka's offer to settle for the amount of Wardlow's policy. The matter went to trial, and a jury ruled in favor of Tanaka, returning a verdict against Wardlow that exceeded her policy limit by approximately $50,000. Wardlow assigned to Tanaka all of her rights to proceed against GEICO. This suit followed.

Tanaka filed three claims against GEICO: bad faith (Count I); breach of contract (Count II); and breach of fiduciary duty (Count III). All three claims sought to recover the same damages; Count I and Count III included essentially identical lists of alleged breaches of duty by GEICO.

On December 22, 2011, GEICO sought dismissal of Count III, arguing that the economic loss rule precluded recovery for breach of fiduciary duty where that duty was derived from the contract that was allegedly breached. (Doc. 8 at 2). On January 24, 2012, the Court granted GEICO's motion and dismissed Count III. (Doc. 24).

On March 7, 2013, however, the Florida Supreme Court handed down its decision in *Tiara Condominium Association v. March & McClennan Co., Inc.*, 714 F.3d 1253 (11th Cir. 2013). In that decision, the Florida Supreme Court traced the development of the economic loss rule, recounting its origin in the area of products liability and its subsequent expansion to situations where the parties are in contractual privity and one party seeks to recover in tort for matters arising from the contract. *Id.* Determining that the expansion must be reversed, the court held that the economic loss rule should only apply in products liability cases. *Id.* at 1262.

On March 15, 2013, based on this change in the law, the Plaintiff moved for reconsideration of this Court's January 24, 2012 order dismissing Count III. (Doc. 114). The Court agreed to reconsider the order and required the parties to provide additional briefs on the issue, which the Court has now considered.

**II.     Analysis**

In the context of a third-party suit, a liability insurer has a contractual obligation to defend and indemnify its insured up to the amount of its policy limit and the power and authority to litigate or settle any claim. *See State Farm Mutual Automobile Insurance Co. v. Laforet*, 658 So. 2d 55, 58 (Fla. 1995) (recounting history and treatment of insurance policies under Florida law with traditional indemnification policies, under which insured controlled resolution of claims, giving way to liability policies, which gave insurer discretion to litigate or settle claims.)

As liability policies became the norm, courts recognized that insurance companies should not possess unbridled discretion to exercise the authority granted to them under those contracts:

> Third-party bad faith actions arose in response to the argument that there was a practice in the insurance industry of rejecting without sufficient investigation or consideration claims presented by third parties against an insured, thereby exposing the insured individual to judgments exceeding the coverage limits of the policy while the insurer remained protected by a policy limit. With no actionable remedy, insureds in this state and elsewhere were left personally responsible for the excess judgment amount. This concern gave life to the concept that insurance companies had an obligation of good faith and fair dealing.

*Allstate Indem. Co. v. Ruiz*, 899 So. 2d 1121, 1125 (Fla. 2005). *See also Auto Mut. Indem. Co. v. Shaw*, 184 So. 852, 859 (Fla. 1938) (recognizing common law cause of action for third-party bad faith where insurer had power to settle claims and conduct defense and stating that "This relationship imposes upon the insurer the duty, not under the terms of the contract strictly speaking, but because of and flowing from it, to act honestly and in good faith toward the insured.").

The relationship that gave rise to bad faith claims was a fiduciary relationship: "[I]nsurance companies took on the obligation of defending the insured, which, in turn, made insureds dependent on the acts of the insurers. . . . This placed insurers in a fiduciary relationship with their insureds, similar to that which exists between an attorney and client." *Laforet*, 658 So. 2d at 58.

> Consequently, courts began to recognize that insurers owed a duty to their insureds to refrain from acting solely on the basis of their own interests in settlement. This duty became known as the "exercise of good faith" or the "avoidance of bad faith". Under this new standard of culpability, if an insurer was found to have acted in bad faith, the insurer would have to pay the entire judgment entered against the insured in favor of the injured third party, including any amount in excess of the insured's policy limits. This type of claim became known as a third-party bad faith action.

*Id.* However, this fiduciary duty did not extend to all facets of the relationship between insurer and insured. Florida never recognized a common-law action for first-party bad faith, because in the first-party context the relationship between insured and insurer was that of debtor and creditor. *QBE Ins. Corp. v. Chalfonte Condominium Apartment Ass'n, Inc.*, 94 So. 3d 541, 546 (Fla. 2012).[1]

Thus, to the extent that Florida law recognizes the existence of a fiduciary relationship between insured and insurer, Florida law has provided a cause of action – the bad faith claim, which Tanaka has already asserted. Allowing Tanaka to also assert a claim for breach of fiduciary duty would be redundant. Accordingly, Count III will not be reinstated.

**DONE** and **ORDERED** in Orlando, Florida on July 1, 2013.

GREGORY A. PRESNELL
UNITED STATES DISTRICT JUDGE

Copies furnished to:

Counsel of Record
Unrepresented Parties

---

[1] In 1982, the Florida Legislature enacted Section 624.155 of the Florida Statutes, the so-called "Bad Faith Statute," which codified prior decisions permitting third-party bad-faith claims and created, for the first time, a first-party bad-faith cause of action. *Id.*